IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| THOMAS D. OVERTON, | * | |
| | * | 4:04-cv-90200 |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| B. DAVIS; R. ANDERSON; D. NICHOLS, | * | |
| and R. WELDER, | * | |
| | * | ORDER |
| Defendants. | * | |
| | * | |

I. BACKGROUND

On April 1, 2004, Plaintiff Thomas D. Overton ("Overton") filed a prisoner suit against Defendants pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his First Amendment rights when they confiscated and destroyed Plaintiff's manuscripts, song poems, and addresses. *See* Clerk's No. 1. Defendants filed an Answer on September 27, 2004, raising numerous affirmative defenses, including the affirmative defense that Plaintiff failed to exhaust his administrative remedies, thus barring his claim pursuant to 42 U.S.C. § 1997e(a). *See* Clerk's No. 8.

On May 5, 2005, Defendants moved for summary judgment (Clerk's No. 13) on the basis that Plaintiff's First Amendment rights were not violated because the confiscation of his personal property was reasonably related to legitimate penological objectives, and because Defendants were entitled to qualified immunity. The Court denied the motion for summary judgment on the bases articulated, and appointed counsel to represent the Plaintiff on March 1, 2006. *See* Clerk's No. 21. The motion for summary judgment did not argue that Plaintiff's action was barred for

failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA").

Trial in this case was set for September 11, 2006.  The Court, however, ordered the trial continued to allow the parties to brief the administrative exhaustion issue and its impact on the case.  Both parties filed briefs, pursuant to the Court's order, and Overton filed a pro se brief as well.  Clerk's Nos. 37-39.  Defendants filed a reply brief.  Clerk's No. 40.  The matter is fully submitted.

## II.  FACTS AND LEGAL ANALYSIS

The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  In *Woodford v. Ngo*, the United States Supreme Court reiterated and clarified the long-standing rule that the PLRA "requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court."  126 S. Ct. 2378, 2380 (2006) (citing 42 U.S.C. § 1997e(a)).  Pointing out that the exhaustion requirement protects administrative agency authority and promotes efficiency, the Supreme Court concluded that *proper* exhaustion of administrative remedies is necessary to serve the goals of the PLRA.  *Id*. at 2387.  Accordingly, the Court found that exhaustion of "all 'available' remedies, not just those that meet federal standards," is mandatory.  *Id*. at 2382; *see also Booth v. Churner*, 121 S. Ct. 1819, 1824-25 (2001) (finding that Congress intended the exhaustion requirement to apply "regardless of the relief offered through administrative procedures").

In the present case, Plaintiff was incarcerated at the Iowa State Penitentiary ("ISP") at the time his written documents were confiscated. ISP has an "Inmate Grievance Procedure," which provides: "An inmate who has a concern and is unable to get satisfactory resolution has the opportunity to submit a grievance to an impartial authority for resolution." Clerk's No. 38.2 at Ex. 1. While Plaintiff admits that he never filed a grievance,[1] he asserts that the present case presents a unique situation such that Plaintiff should not be subject to the exhaustion requirement of the PLRA. Specifically, Plaintiff argues that ISP Grievance Officer Dave DeGrange was present when Deb Nichols, Unit Manager, told two guards that it was permissible to confiscate Plaintiff's property. Plaintiff claims that he complained directly to Grievance Officer DeGrange, and was told that "the matter was non-grievable—there was nothing he could do." Clerk's No. 38 at 3. Plaintiff asserts that, had he attempted to grieve the matter formally, he would have been subjected to disciplinary action in light of DeGrange's statement to him that the matter was non-grievable. The Court finds Plaintiff's argument unpersuasive under current precedent in this judicial district.

In *Lyon v. Vande Krol*, 305 F.3d 806 (8th Cir. 2002), Lyon, an ISP inmate, brought a civil rights action alleging that the prison's exclusion of him from participating in Jewish services and holidays violated his constitutional rights. *Id*. at 807. Lyon admitted that the prison had a grievance procedure and that he did not use it. He claimed, however, that he was prevented from exhausting his administrative remedies under the grievance procedure because

---

[1] In his Complaint, Plaintiff claims that his possessions were confiscated on March 29, 2004. He filed the present federal action on April 8, 2004. There is no dispute that Plaintiff never filed a grievance pursuant to ISP's Inmate Grievance Procedure prior to filing the present action. *See* Clerk's Nos. 37.2-37.3 (Affidavits of Nancy Kucera and David DeGrange).

the administrative remedies he sought were not "available." *Id*. at 808. Specifically, Lyon argued that he did not comply with the grievance procedure because he was told by prison staff that the decision to exclude him from participating in the Jewish community rested in the hands of "Jewish experts," rather than ISP officials. *Id*. The Eighth Circuit Court of Appeals rejected Lyon's argument, finding that his was not a case where the exhaustion requirement should be waived, such as when prison officials prevent inmates from exhausting their administrative remedies. *See id.* at 808-09 (citing *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001) (concluding exhaustion not required where prison officials refused to respond to inmate's informal resolution requests, the first part of the three-part grievance process) and *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (finding exhaustion not required where prison officials impeded inmate's access to grievance process by failing to respond to inmate's requests for grievance forms)). Indeed, the Court of Appeals found that, at best, Lyon was given a prediction that he would lose if he complained through the administrative grievance procedure:

> It was not a denial of Mr. Lyon's right to complain, nor could the statement have misled him about the availability of the procedure. . . . [I]t cannot in any event have changed the fact that procedures were available to Mr. Lyon through which he could claim that his constitutional rights had been violated. It does not matter, finally, that Mr. Lyon may have subjectively believed that there was no point in his pursuing administrative remedies: We made it clear in *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000), *cert. denied*, 531 U.S. 1156, 121 S. Ct. 1106, 148 L. Ed. 2d 977 (2001), that § 1997e(a) does not permit the court to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are "available." *Id*.

*Lyon*, 305 F.3d at 809. Accordingly, the Court of Appeals remanded the case to the district court with instructions to dismiss Lyon's complaint. *Id*.

Plaintiff attempts to distinguish *Lyon* on the basis that Lyon was essentially told that he

would lose the grievance process, whereas Plaintiff was told that his complaints were actually outside of the grievance procedures.  Plaintiff argues that to require exhaustion in his situation would mean that prisoners cannot rely on grievance officials and must file grievances even when they have been told that to do so would be fruitless.  The Court finds the distinction to be without merit.[2]  ISP's Inmate Grievance Procedure provides that "[p]olicies, conditions . . . employees, and other inmates within the institution that affect you personally as well as actions by employees and/or inmates" may be grieved.  Clerk's No. 38.2 at Ex. 1.  The Affidavits of both Nancy Kucera and David DeGrange state that property issues are generally grievable under the grievance policy.  *See* Clerk's Nos. 37.2-37.3.  Prior to filing a formal grievance, an inmate must first "genuinely attempt informal resolution" of the matter.  Clerk's No. 38.2 at Ex. 1.  Then, if the issue is not resolved, the inmate may make a formal grievance using a "Grievant Complaint Form."  *Id*.  "Grievances determined to be non-grievable will be identified by written response with no appeal opportunity."  *Id*.

At best, it appears that Plaintiff did nothing to grieve his dispute other than to undertake the first step of the grievance process, informal resolution.  Further, nothing in the record supports Plaintiff's assertion that, had he attempted to file a formal grievance, he would have been subjected to disciplinary action.  The Inmate Grievance Procedure provides:

>Inmates are expected to use the grievance resolution process in good faith.

---

[2] In Plaintiff's Brief, counsel Patrick Ingram acknowledges that the present case is "unfortunately very facially similar to the situation in *Lyon v. VanDeKrol*[.]" Clerk's No. 39 at 2.  Mr. Ingram goes on to state that he "believes that *Lyon* was wrong at the time and is still convinced that is still true." *Id*.  While the Court has rejected counsel's position and adhered to the precedent set in *Lyon*, it nonetheless commends Mr. Ingram for his candor in discussing *Lyon*'s similarity to the present case, as well as for his dedication to his client in attempting to distinguish *Lyon* from the present factual scenario.

> Deliberate misuse, malicious, or frivolous use of the procedure may result in limitations or restrictions. Appropriate disciplinary action may be taken for repeated abuse or improper use of the grievance program. Reprisals or disciplinary action will not be taken against the inmate for his good faith use of the grievance procedure.

*Id.* Plaintiff has not alleged that Grievance Officer DeGrange told him that he would be subject to disciplinary action if he filed a formal grievance. Rather, nothing other than Plaintiff's own speculation supports such a conclusion.[3] This is insufficient to constitute an exception to the PLRA's requirement that "a prisoner [] exhaust any available administrative remedies before challenging prison conditions in federal court." *Woodford*, 126 S. Ct. at 2380 (citing 42 U.S.C. § 1997e(a)).

To the extent that Plaintiff argues that Defendants have untimely asserted the exhaustion issue, the Court also must disagree. Plaintiff argues that Defendants did not timely plead the exhaustion waiver defense because in answering the Complaint, Defendants did "not state any additional facts deemed to show an Exhaustion Waiver Defense." Clerk's No. 38 at 4. In their Answer to Plaintiff's Complaint, however, Defendants clearly pleaded the following as an affirmative defense: "Plaintiff has failed to exhaust his administrative remedies and his claim is barred by 42 U.S.C. § 1997e(a)." Clerk's No. 8. The content of that affirmative defense clearly states the relevant and material fact of the defense, i.e., that Plaintiff did not properly exhaust his administrative remedies. No further factual allegations were necessary to properly preserve the exhaustion defense.

---

[3] Plaintiff claims that he would have been "written up" for abuse of process because non-grievable issues "may not" be appealed under the Inmate Grievance Procedure. Plaintiff never, however, filed a formal grievance and thus, never received a written statement, provided for by the policy, that his claim was non-grievable. Hence, the assertion that partaking of the second phase of the grievance procedure would constitute an unauthorized "appeal" is without any evidentiary support.

Finally, Plaintiff urges that, should the Court find that he has failed to exhaust his administrative remedies, it should stay the matter to permit exhaustion, rather than dismissing it. The Eighth Circuit has explicitly rejected such an approach:

> Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies before filing suit in federal court.  Thus, in considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred.  If exhaustion was not completed at the time of filing, dismissal is mandatory.
>
> We also recognize the holdings of many of our sister circuits that permitting exhaustion *pendente lite*[4] undermines the objectives of section 1997e(a) and that the language of section 1997e(a) clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement, thus requiring an outright dismissal of such actions rather than issuing continuances so that exhaustion may occur.

*Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003) (collecting cases and concluding that dismissal is mandatory under § 1997e(a)).

### III.  CONCLUSION

For the reasons stated herein, the Court concludes that Plaintiff has failed to exhaust his administrative remedies, as required by the PLRA, 42 U.S.C. § 1997e(a).  The Court further concludes that no exception to the exhaustion requirement is applicable, and that § 1997e(a) mandates dismissal of Plaintiff's action as a result.  Accordingly, Plaintiff's Complaint is hereby DISMISSED.

---

[4] "Pendente lite" is defined as "[p]ending the lawsuit; during the actual progress of a suit during litigation."  *Black's Law Dictionary* 785 (6th ed. 1991).

IT IS SO ORDERED

Dated this ___23rd___ day of October, 2006.

_____
ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT